In re **LOS ANGELES LUMBER PRODUCTS CO., Ltd.**

No. 31352.

District Court, S. D. California, Central Division.

Feb. 8, 1941.

Gibson, Dunn & Crutcher and Faries & McDowell, all of Los Angeles, Cal., Long, St. Lewis & Nyce, Sp. Counsel, of Washington, D. C., and Lillick, Geary, McHose & Adams, Sp. Counsel, of Los Angeles, Cal., for debtor corporation.

Warren E. Libby, of Los Angeles, Cal., for bondholders' committee.

George R. Larwill and Frank S. Balthis, Jr., both of Los Angeles, Cal., for intervening bondholders.

Thomas K. Case, of Los Angeles, Cal., in pro. per.

Robert M. Clarke, of Los Angeles, Cal., for Cowan estate.

William Schoenau, Jr., of Los Angeles, Cal., in pro. per.

W. L. Nossaman, of Los Angeles, Cal., for Security-First Nat. Bank of Los Angeles.

Chas. F. Johnson, of Los Angeles, Cal., for Securities and Exchange Commission.

JENNEY, District Judge.

We have before us for consideration the petition of Messrs. Faries and McDowell, attorneys, for an allowance on account of fees in this proceeding in the amount of $31,415. The petition for continuance heretofore filed is denied.

Reference is made to the stipulation of facts and the summary of evidence, on file herein, for a detailed statement of the facts. Briefly, the established facts are as follows: Petitioner is a law partnership, composed of David R. Faries and Charles E. McDowell, as general partners, and Clifford Argue and McIntyre Faries, as junior partners. A large part of the legal work in this proceeding has been performed on behalf of the firm by Mr. Argue. The work has been well done. Mr. McIntyre Faries and Mr. McDowell have had little professional connection with the case. Continuously since about June 29, 1936, the firm has been one of debtor's chief counsel, and David R. Faries was until about April 15, 1940, a director and vice-president of debtor.

The Securities and Exchange Commission is participating in this proceeding with the approval of this Court, pursuant to the provisions of Section 208 of the Bankruptcy Act of 1898, as amended by the Chandler Act of 1938, 11 U.S.C.A. § 608. The Commission has appeared herein and has, with others, presented objections to the allowances here applied for. These objectors contend that the charges are excessive and, also, that no allowance whatsoever should be made under the circumstances. If the latter contention is sound, we need not consider the reasonableness of the charges made.

By formal order and permission of this Court, debtor has been at all times in possession of its properties and has operated its business. Under those circumstances the directors of debtor have the powers and responsibilities of trustees in bankruptcy, appointed pursuant to Section

44 of the Bankruptcy Act, 11 U.S.C.A. § 72. In re Martin Custom Made Tires Corp., 2 Cir., 108 F.2d 172, 41 A.B.R.,N.S., 407; In re Wil-Low Cafeterias, Inc., 2 Cir., 111 F.2d 83, 42 A.B.R.,N.S., 344; Urban Properties Corp. v. Benson, Inc., 9 Cir., Dec. 13, 1940, 116 F.2d 321.

We have heretofore felt it proper to make applicable Section 249 of the Bankruptcy Act of 1898, as so amended by said Chandler Act of 1938, 11 U.S.C.A. § 649, Section 276, sub. c(2), 11 U.S.C.A. § 676, sub. c(2), even though the Chandler Act did not become effective until September 22, 1938, more than seven months after the filing of the original petition in these proceedings. We took this action only after careful consideration of the entire matter and a study of the decided cases, particularly In re Old Algiers, 2 Cir., 1938, 100 F.2d 374, 38 A.B.R.,N.S., 591; In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 1939, 105 F.2d 354, 356; Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 1940, 110 F.2d 333, 42 A.B.R.,N.S., 542; In re Mountain States Power Co., D.C.Del.1940, 35 F.Supp. 307; In re Arcade Malleable Iron Co., D.C.Mass.1940, 35 F.Supp. 461.

The test of practicability is "whether the new provisions, for aught that has happened in the pending proceedings, can be applied as fairly and conveniently as they could be had the proceeding been started within three months of the effective date of the Act". We felt that they could be so applied.

The second sentence of said Section 249 provides as follows: "No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred."

Subsequent to the commencement of these proceedings and during the pendency thereof and while debtor was in possession, David R. Faries purchased certain bonds of the debtor. From time to time, during the period from March 22, 1938, to about February 20, 1940, he acquired a total of $252,500 face value of such bonds at the aggregate price of approximately $69,999.-84. These purchases were all made on the open market at going market prices and largely through brokers. The purchase by Mr. Faries of these bonds, or any of them, was not authorized by the court and was never taken up and authorized at any meeting of the board of directors of debtor. Nor were such purchases, or any of them, subsequently approved or ratified by said board or by the Court. In any event, such an approval or ratification by the board of directors and the Court would seem ineffectual by reason of the express wording of said section 249. We are in complete accord with the interpretation given this section by Judge Peters in the case of Otis & Co. v. Insurance Bldg. Corp., supra, and merely refer to that able opinion. This rule may seem harsh. And it may sometimes work a hardship in cases involving innocent persons or unintentional wrongdoing. However, the rule must be severe to be effective. And, surely, members of the bar must be presumed to know the law and, for the general good, must be charged with the responsibility of protecting themselves.

Although there is no specific provision on the subject in the old Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, courts have followed the same principles which actuated Congress in passing the new Section 249. See In re Republic Gas Corp., D.C.S.D.N.Y. June 10, 1936, 35 F.Supp. 300: In re Paramount-Publix Corp., D.C. S.D.N.Y., 12 F.Supp. 823, reversed on other grounds, 2 Cir., 83 F.2d 406. In the latter case, compensation was denied members of a bondholders' committee who had dealt in debtor's bonds during the pendency of the reorganization proceeding, under the broad doctrine that the estate was entitled to loyal and disinterested service, unaffected by any possible personal interest. This Section 249 was apparently enacted by Congress for the express purpose of codifying and giving general application to the rules enunciated by the courts in these decided cases.

That a trustee in a bankruptcy proceeding and his attorney should have no interest other than that of the estate itself, is fundamental. Wilson v. Continental Bldg. & Loan Ass'n, 9 Cir., 232 F. 824, 37 A.B.R. 444. The rules laid down by the courts for the conduct of fiduciaries, generally, are designed "to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity." Magruder v.

Drury, 235 U.S. 106, 119, 35 S.Ct. 77, 82, 59 L.Ed. 151; Woods v. City National Bank & Trust Co. of Chicago, Feb. 3, 1941, 61 S.Ct. 493, 85 L.Ed. ——. See, also, In re Norcor Mfg. Co., 7 Cir., 109 F.2d 407, certiorari denied, Norcor Co. v. Schmitt, 310 U.S. 625, 60 S.Ct. 898, 84 L.Ed. 1396; Pepper v. Litton, Dec. 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, and the decision of our distinguished colleague, Judge McCormick, in Re Stephens & Co., D.C., 30 F.2d 725. And it is no answer to say that no fraud or unfairness resulted. Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 65 L.Ed. 418. Equity has long subjected to the closest scrutiny any act of a fiduciary which contained even the germ of a conflict between the interests of the beneficiaries and the self-interest of the fiduciary; and we believe no good purpose would be served by discussing here any distinction in responsibility among attorneys, directors, officers, formal trustees, etc. It must be acknowledged that Mr. Faries was at all times herein mentioned either a fiduciary or an officer of the court.

■■ It seems clear that the activities of Mr. Faries are covered by the broad language of the above quotation from Section 249. The suggestion that the section is intended to cover only committees and persons who, like committees, represent a group or class of persons, does not seem tenable. As used in other sections of the Act which deal with compensation, the word "attorney" clearly means any attorney-at-law. The same meaning is indicated in Section 249. Equally indefensible would be such a limitation of the broad language "or other person acting in the proceedings in a representative or fiduciary capacity." Mr. Faries as an officer and director of, and attorney for, the debtor owed a fiduciary obligation to all persons interested—or, indeed, who might by operation of law become interested—in debtor's estate. He is, therefore, just as much a representative of a group or class of persons as is a member of a committee. Cf. In re Colonial Utilities, Inc., et al., D.C.D.Del., 34 F.Supp. 223.

It is contended here that, although Mr. Faries may be barred from compensation, the firm of which he is a member is in a different position. We must then decide whether or no those partners who were ignorant of Mr. Faries' bond transactions —if, indeed, there were any such partners —or those partners who did not participate in the transactions, should be permitted to receive any share of the compensation to which the firm would normally be entitled. The court feels that in a situation such as this, each member of a law firm should share the responsibility for the individual acts of another partner or other partners. To construe Section 249 otherwise would largely destroy its effectiveness. The relationship between partners is too close to make it possible to insure that compensation allowed to an innocent partner may not ultimately benefit a guilty partner, directly or indirectly. If Section 249 were to be construed as suggested, it might be possible to work out evasions of its provisions whereby one partner traded and another did legal work. Such a situation would be intolerable. See Tracy v. Willys Corporation, 6 Cir., 1930, 45 F.2d 485.

The petition for fees is therefore denied. It is so ordered.